UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Department of Justice, Antitrust Division<br>450 Fifth Street NW<br>Washington, DC 20530,<br><br>*Plaintiff*,<br><br>v.<br><br>LEGENDS HOSPITALITY PARENT<br>HOLDINGS, LLC<br>61 Broadway<br>24th Floor<br>New York, New York 10006,<br><br>*Defendant*. | Case No. 1:24–cv–5927 |

# COMPLAINT

The United States of America brings this civil action to obtain equitable and monetary relief in the form of civil penalties against the Defendant, Legends Hospitality Parent Holdings, LLC ("Legends") for violating the premerger notification and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976 ("HSR Act"), and alleges as follows:

## I.     INTRODUCTION

1.     The HSR Act, 15 U.S.C. § 18a, is an essential part of modern antitrust enforcement. It requires the buyer and seller of voting securities or assets in excess of a certain value to notify the Department of Justice and the Federal Trade Commission *prior* to consummating the acquisition, and to observe a suspensory waiting period after the notification is filed.  A buyer could "acquire" assets without taking formal legal title, for instance by exerting operational control over the assets or otherwise obtaining "beneficial ownership."  The HSR

1

Act's advance notice and waiting period requirements ensure that the parties to a proposed transaction continue to operate separately and independently during review, preventing anticompetitive acquisitions from harming consumers before the United States has had the opportunity to review them according to the procedures established by Congress in the Clayton Act. A buyer that prematurely takes beneficial ownership of assets, sometimes referred to as "gun jumping," is subject to statutory penalties for each day it is in violation.

## II.  JURISDICTION, VENUE, AND INTERSTATE COMMERCE

2. This Complaint is filed and these proceedings are instituted under Section 7A of the Clayton Act, 15 U.S.C. § 18a, added by Title II of the HSR Act, to recover civil penalties for violations of that section and other relief.

3. This Court has jurisdiction over the subject matter of this action pursuant to Section 7A(g) of the Clayton Act, 15 U.S.C. § 18a(g), and pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345 and 1355.

4. The Defendant has consented to personal jurisdiction and venue in the United States District Court for the Southern District of New York for purposes of this action.

5. Legends is engaged in commerce, or in activities affecting commerce, within the meaning of Section 7A(a)(1) of the Clayton Act, 15 U.S.C. § 18a(a)(1).

## III.  THE DEFENDANT

6. Defendant Legends is a global venue services company headquartered in New York, New York.  It is majority-owned by Sixth Street Partners, its minority owners include the New York Yankees and the Dallas Cowboys, and it has a strategic partnership with The Kroenke Group.  Legends focuses predominantly on food and beverage services, feasibility studies, project development, and sales.

## IV.   WAITING PERIOD REQUIREMENTS OF THE HSR ACT

7.   The HSR Act requires certain acquiring persons, and certain persons whose voting securities are acquired, to file notifications with the Department of Justice and Federal Trade Commission and to observe a waiting period before consummating certain acquisitions of voting securities or assets. 15 U.S.C. § 18a (a) and (b).  Of relevance here, the notice and waiting requirements apply if, as a result of the acquisition, the acquiring person will "hold" assets or voting securities above the HSR Act's size of transaction threshold.

8.   Pursuant to Section (d)(2) of the HSR Act, 15 U.S.C. § 18a(d)(2), the Federal Trade Commission promulgated rules to carry out the

9.   purpose of the HSR Act. 16 C.F.R. §§ 801-803.

10.   Section 801. 1(c) of the HSR Rules, 16 C.F.R. § 801.1(c) defines "hold" to mean "beneficial ownership, whether direct, or indirect through fiduciaries, agents, controlled entities or other means."

11.   Section 7A(g)(1) of the Clayton Act, 15 U.S.C. § 18a(g)(1), states that any person, or any officer, director, or partner thereof, who fails to comply with any provision of the HSR Act is liable to the United States for a civil penalty for each day during which the person is in violation.  Pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, § 701 (further amending the Federal Civil Penalties Inflation Adjustment Act of 1990), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 89 Fed. Reg. 1,445 (Jan. 10, 2024), the maximum amount of civil penalty relevant to this Complaint is $51,744 per day.

## V.   THE ACQUISITION AND THE DEFENDANT'S UNLAWFUL CONDUCT

12.   Legends and ASM Global, Inc. ("ASM") began acquisition discussions in January 2023.  ASM is a venue services company primarily focused on venue management, i.e. providing services related to the day-to-day operations of a venue like event booking, operations, sanitation, and security among other services.  On November 3, 2023, Legends agreed to purchase ASM for $2.325 billion ("Acquisition").  On November 6, 2023, Legends filed its HSR notice with the Department of Justice.

13.   The Acquisition exceeded thresholds established by the HSR Act and did not qualify for any of the HSR Act's exemptions.  Consequently, the Acquisition was subject to the premerger and notification requirements of the HSR Act.  The applicable waiting period, which was extended by the issuance of requests for additional information on January 8, 2024, expired on May 29, 2024.[1]  During this statutory waiting period, the HSR Act[2] required Legends and ASM to continue to operate as separate and independent entities while the Antitrust Division of the Department of Justice conducted a pre-consummation antitrust review of the Acquisition.  Legends, however, failed to adhere to its statutory obligation and assumed unlawful control of ASM prior to the expiration of the HSR waiting period.

14.   In May 2023, Legends won the right to manage a city-owned arena in California upon the expiration of ASM's management lease on July 31, 2024.  ASM also competed for this opportunity.  As part of its bid for the California arena, Legends submitted a detailed transition plan that included key milestone dates for booking, operations, human resources, engineering,

---

[1] Legends and ASM agreed to not close the Acquisition during the pendency of the Department of Justice's investigation.
[2] Other antitrust laws also can apply to pre-closing conduct of transaction parties.

4

sanitation, production, security, event staffing and other services. Absent the Acquisition, Legends was planning to provide those services itself to the arena.

15. Due to the Acquisition with ASM, however, Legends decided to have ASM provide those services instead. After submitting its HSR filing, but before the expiration of the HSR waiting period, Legends decided that ASM would continue to operate the California arena. For example, on December 7, 2023, Legends and ASM signed an initial agreement whereby ASM would book third-party events for the California arena instead of Legends. Further, on April 9, 2024, Legends decided that ASM would continue providing venue management services for the California arena instead of transitioning the arena to Legends.

16. The purpose and intent of Legends' pre-closing conduct in connection with the California arena also are informed by aspects of Legends' course of conduct in connection with ASM, including conduct before and after submitting the HSR filing.

17. For example, while Legends and ASM were in discussions around the Acquisition, but before the HSR filing, Legends sought to discuss competitive bidding strategies with ASM. In August 2023, Legends learned that a city in North Carolina was planning to issue an RFP for management of an existing entertainment complex, including an arena and other venues. A senior Legends executive emailed Legends' then-CEO noting, "I assume we would rather have ASM chase this?" The then-CEO informed another executive, "we will find out if ASM is bidding as don't want to both be bidding," and set a calendar reminder for himself to speak with a senior ASM executive about the North Carolina RFP.

18. In addition, in early 2023, Legends and ASM learned that a university was planning to develop a new arena. Both Legends and ASM initially took steps to form separate, independent bids for the new arena. However, after Legends and ASM were in discussions

5

around the Acquisition, their posture changed, such that in May 2023 they decided that they would instead try to bid together. While constructing their joint bid, Legends and ASM exchanged competitively sensitive information surrounding the arena development project.

19. Legends and ASM engaged in similar behavior for a different proposed university arena. Prior to Acquisition negotiations, Legends and ASM were pursuing independent actions to try to win the development of the new arena. This posture changed in 2024, when, during the HSR waiting period, Legends and ASM pursued plans to submit a joint bid and exchange related information.

### VI.   VIOLATION OF SECTION 7A OF THE CLAYTON ACT

20. Plaintiff alleges and incorporates paragraphs 1 through 18 as if set forth fully herein.

21. Legends' acquisition of ASM was subject to Section 7A premerger notification and waiting-period requirements.

22. Legends obtained beneficial ownership of ASM prior to observing the applicable waiting period in violation of Section 7A.

23. Accordingly, Defendant was continuously in violation of the requirements of the HSR Act each day beginning at least on December 7, 2023, until the waiting period was terminated on May 29, 2024.

### VII.   REQUEST FOR RELIEF

Wherefore, Plaintiff requests:

(a) that the Court adjudge and decree that Defendant violated the HSR Act and was in violation during the period of 175 days beginning on December 7, 2023, and ending on May 29, 2024;

  (b)  order that Defendant pay to the United States an appropriate civil penalty as provided by the HSR Act, 15 U.S.C. § 18(a)(g)(1), the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, § 701 (further amending the Federal Civil Penalties Inflation Adjustment act of 1990, 28 U.S.C. § 2461 note), and 16 C.F.R. § 1.98(a);

  (c)  that the Court enjoin Defendant from any future violations of the HSR Act;

  (d)  that the Court award the Plaintiff its costs of this suit; and,

  (e)  that the Court order such other and further relief as the Court may deem just and proper to redress and prevent recurrence of the alleged violations and to dissipate their anticompetitive effects.

Dated this 5th day of August, 2024.

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES OF AMERICA**:

| | |
|---|---|
| JONATHAN S. KANTER<br>Assistant Attorney General for Antitrust | /s/ Collier T. Kelley<br>COLLIER T. KELLEY |
| DOHA G. MEKKI<br>Principal Deputy Assistant Attorney General for Antitrust | ASEEM CHIPALKATTI<br>ALEX COHEN<br>WILLIAM H. JONES II<br>BRITTNEY DIMOND |
| ANDREW J. FORMAN<br>Deputy Assistant Attorney General | MICHAEL G. MCLELLAN<br>*Trial Attorneys* |
| HETAL J. DOSHI<br>Deputy Assistant Attorney General | United States Department of Justice<br>Antitrust Division<br>450 Fifth Street N.W., Suite 4000 |
| RYAN DANKS<br>Director of Civil Enforcement | Washington, DC 20530<br>Telephone: (202) 445-9737<br>Facsimile: (202) 514-7308 |
| CATHERINE K. DICK<br>Acting Director of Litigation | Email: Collier.Kelley@usdoj.gov |
| OWEN M. KENDLER<br>Chief, Financial Services, Fintech & Banking Section | *Attorneys for the United States* |
| MEAGAN K. BELLSHAW<br>Assistant Chief, Financial Services, Fintech & Banking Section | |
| SARAH H. LICHT<br>Assistant Chief, Financial Services, Fintech & Banking Section | |