**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

              Plaintiff,

     v.

LEGENDS HOSPITALITY
PARENT HOLDINGS, LLC

          Defendant.

Case No.  1:24–cv–05927–JPC

## FINAL JUDGMENT

WHEREAS, Plaintiff, United States of America, filed its Complaint on August 5, 2024, alleging that Defendant Legends Hospitality Parent Holdings, LLC violated Section 7A of the Clayton Act, 15 U.S.C. § 18a, commonly known as the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (the "Hart-Scott-Rodino Act");

AND WHEREAS, the United States and Defendant have consented to the entry of this Final Judgment without the taking of testimony, without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party relating to any issue of fact or law;

AND WHEREAS, Defendant agrees to undertake certain actions and refrain from certain conduct for the purpose of resolving the claims alleged in the Complaint;

AND WHEREAS, Defendant represents that the relief required by this Final Judgment can and will be made and that Defendant will not later raise a claim of hardship or difficulty as grounds for asking the Court to modify any provision of this Final Judgment;

2

NOW THEREFORE, it is ORDERED, ADJUDGED, AND DECREED:

## I.     JURISDICTION

The Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendant under Section 7A of the Clayton Act (15 U.S.C. § 18a).

## II.     DEFINITIONS

As used in this Final Judgment:

A.     "Legends" or "Defendant" means Defendant Legends Hospitality Parent Holdings, LLC, a Delaware corporation with its headquarters in New York, New York, its successors and assigns, subsidiaries, divisions, groups, partnerships, joint ventures, and officers, managers, and employees.  For the avoidance of doubt: (1) "Legends" shall include ASM Global Parent, Inc., following its acquisition by Legends Hospitality Parent Holdings, LLC; and (2) this provision applies only to subsidiaries, partnerships, or joint ventures in which Legends has a partial (more than 50%) or total ownership or control. Any ownership or control interest held jointly by Legends and any parent or owner of Legends shall be attributed to Legends and aggregated with Legends' ownership or control.

B.     "Agreement" means any agreement, contract, or mutual understanding, whether formal or informal, written, or unwritten.

C.     "Bid" or "Bidding" means any offer or response to a Request for Proposal, Request for Submission, Request for Information, Request for Qualifications, or any other similar request, relating to a contract or other arrangement (including extensions or renewals of any existing contract or other arrangement) to provide services to an existing or potential venue.

D.    "Collaboration Agreement" means any Agreement by and among Defendant and any Competitor to collaborate or team in offering or providing Venue Development Services or to act as the Venue Manager.  "Collaboration Agreement" does not include contracting for services where Legends is acting as the agent of a client or acting pursuant to a contract with a client.

E.    "Communicate" or "Communicating" and "Communication(s)" means to provide, send, discuss, circulate, exchange, request, or solicit information, whether directly or indirectly, and regardless of the means by which it is accomplished, including orally or by written or recorded means of any kind, including electronic communications, e-mails, chats or other ephemeral messages, facsimiles, telephone communications, voicemails, text messages, audio recordings, meetings, interviews, correspondence, exchange of written or recorded information, face-to-face meetings, or social media.

F.    "Competitively Sensitive Information" means any non-public information of Defendant or any Competitor, including information relating to negotiating positions, tactics, or strategy; pricing or pricing strategies; Bids or Bidding strategies; intentions to Bid or not to Bid; decisions to Bid; whether a Bid was or was not submitted; and costs, revenues, profits, or margins.

G.    "Competitor" means any Person (other than Defendant) engaged in, or that Defendant's executives or senior managers know is considering engaging in, any of Defendant's present or future lines of business, including food and beverage or hospitality services, venue management, project management, sponsorship, and/or sales of premium seating.

H.    "Covered Person" means: (i) any employee or agent of Defendant whose principal job responsibilities include the sales, client outreach, or the negotiation of terms or development

of Bids or proposals for services to Venues (other than employees or agents whose responsibilities are entirely clerical or limited to document preparation); (ii) all General Managers of any Venue managed by Defendant (iii) Defendant's Chief Executive Officer and each of his or her direct reports; (iv) members of Defendant's Board of Directors; and (v) designated Board observers.

  I.  "Including" means including, but not limited to.

  J.  "Negotiation and Interim Period" means the period between the commencement of negotiations with respect to an offer to enter into a Transaction, and the date when negotiations are abandoned or when any resulting Transaction is consummated or abandoned.

  K.  "Person" means any natural person, corporation, company, partnership, joint venture, firm, association, sole proprietorship, agency, board, authority, commission, office, institution, university, municipality, governmental entity, or other business or legal entity, whether private or governmental.

  L.  "Transaction" means any Agreement to acquire any voting securities, assets, or non-corporate interests, form a joint venture, settle litigation, or license intellectual property with any Person where such Agreement is reportable under the Hart-Scott-Rodino Antitrust Improvements Act of 1976.

  M.  "Venue" means a facility that hosts publicly ticketed live events, including stadiums, arenas, convention centers, amphitheaters, clubs, and theaters.

  N.  "Venue Development Services" means managing, investing, or financing the development, construction, or renovation of venues. "Venue Development Services" does not include feasibility or market studies.

O.      "Venue Manager" means the primary entity that manages a venue, including by providing services necessary to operate the venue, such as administration, operations, concert and live event booking, finance and accounting, marketing, human resources, housekeeping, security, parking, and/or production services.

## III.    APPLICABILITY

This Final Judgment applies to Defendant, as defined above, and all other Persons in active concert or participation with Defendant who receive actual notice of this Final Judgment.

## IV.    CIVIL PENALTY UNDER SECTION 7A OF THE CLAYTON ACT

A.      Within thirty (30) days of entry of this Final Judgment, Defendant must pay a civil penalty in the amount of $3,500,000.  Payment of the civil penalty must be made by wire transfer of funds or cashier's check.  Prior to making a wire transfer, Defendant must contact the Budget and Fiscal Section of the Antitrust Division's Executive Office at ATR.EXO-Fiscal-Inquiries@usdoj.gov for instructions.  A payment made by cashier's check, must be made payable to the United States Department of Justice – Antitrust Division and delivered to:

Chief, Budget & Fiscal Section
Executive Office, Antitrust Division
United States Department of Justice
Liberty Square Building
450 5th Street, NW
Room 3016
Washington, D.C. 20530

B.    In the event of a default or delay in payment, interest at the rate of eighteen (18) percent per annum will accrue from the date of the default to the date of payment.

## V.    PROHIBITED CONDUCT

A.    Defendant may not, directly or indirectly, during any Negotiation and Interim Period of a Transaction or in connection with an actual or potential Collaboration Agreement:

    1.    Share Competitively Sensitive Information with any Competitor;

    2.    Communicate with any Competitor concerning any Competitively Sensitive Information relating to a Bid or Bidding, including whether to Bid or not to Bid;

    3.    Agree with any Competitor to participate in any joint Bid, collaborative Bid, cooperative Bid, or shared Bid for any contract, opportunity, or arrangement or for a part of any contract, opportunity, or arrangement; or

    4.    Agree with any Competitor that Defendant or any Competitor will not Bid for any contract, opportunity, or arrangement or for a part of any contract, opportunity, or arrangement.

B.    The prohibitions in Paragraph V.A. apply to Defendant's Communicating, Agreeing, or sharing through any third-party agent or third-party consultant working at Defendant's instruction, direction, or request.

C.    Notwithstanding the foregoing, nothing in this Final Judgment prohibits Defendant from engaging in conduct in Paragraphs V.A.1-4 above in connection with a Collaboration Agreement, or from engaging in conduct in Paragraph V.A.1 for due diligence or integration planning purposes during any Negotiation and Interim Period of a Transaction, if

Defendant first secures advice of antitrust counsel and consults with the Antitrust Compliance

Officer, *see infra* Section VI, and obtains advanced written permission from Defendant's Chief

Executive Officer or General Counsel.   Nothing in Section V prohibits Defendant, after securing

the advice of counsel and in accordance with applicable laws, from sharing information for the

purpose of petitioning a government entity or engaging in legal advocacy.   For avoidance of

doubt, nothing in the Final Judgment, including compliance with this Paragraph V.C., precludes

the United States from investigating or, if appropriate, bringing action against Defendant or any

other person for violations of any antitrust law.

## VI.    REQUIRED CONDUCT

A.    Within ten (10) days of entry of this Final Judgment, Defendant must appoint or

employ an Antitrust Compliance Officer, and identify to the United States the Antitrust

Compliance Officer's name, business address, telephone number, and email address.   Within

forty-five (45) days of a vacancy in Defendant's Antitrust Compliance Officer position,

Defendant shall appoint a replacement, and shall identify to the United States the Antitrust

Compliance Officer's name, business address, telephone number, and email address.

Defendant's initial and replacement appointment of an Antitrust Compliance Officer is subject to

the approval of the United States in its sole discretion.   Defendant is responsible for all costs and

expenses related to the Antitrust Compliance Officer.

B.    Notwithstanding the foregoing, for the first 120 days following entry of the Final

Judgment, Defendant may retain outside counsel as an Antitrust Compliance Officer, subject to

the approval of the United States in its sole discretion.

C.    Unless otherwise agreed by the United States, the Antitrust Compliance Officer

must have the following minimum qualifications:

8

1.    be an active member in good standing of the bar in any U.S. jurisdiction; and

2.    at least five years' experience in legal matters, including at least five years' experience with antitrust matters.

D.    Defendant may appoint or retain one or more Reserve Antitrust Compliance Officers meeting the qualifications set forth in VI.C to perform duties of the Antitrust Compliance Officer when the Antitrust Compliance Officer is not available. Defendant's initial and replacement appointment of a Reserve Antitrust Compliance Officer is subject to the approval of the United States in its sole discretion.

E.    The Antitrust Compliance Officer must, directly or through employees or counsel working at the Antitrust Compliance Officer's direction:

1.    within thirty (30) days of entry of this Final Judgment, furnish to each Covered Person a copy of this Final Judgment, the Competitive Impact Statement filed by the United States with the Court, and an explanatory cover letter prepared by Defendant providing reasonable notice of the meaning and requirements of this Final Judgment, with notice provided to the United States;

2.    brief and distribute a copy of this Final Judgment and the Competitive Impact Statement to any Person who succeeds to a position of a Covered Person, and provide reasonable notice of the meaning and requirements of this Final Judgment and the antitrust laws, within sixty (60) days of such succession;

3.    obtain from each Covered Person, within thirty (30) days of that Person's receipt of this Final Judgment, a certification that he or she (i) has read and, to

9

the best of his or her ability, understands and agrees to abide by the terms of this Final Judgment; (ii) is not aware of any violation of this Final Judgment that has not been reported to the Antitrust Compliance Officer; and (iii) understands that any Person's failure to comply with this Final Judgment may result in an enforcement action for civil or criminal contempt of court against Defendant and/or any Person who violates this Final Judgment;

4. provide an Annual Antitrust Compliance Training to all Covered Persons and members of Defendant's Board of Directors on the meaning and requirements of this Final Judgment, the antitrust laws, and guidelines governing:

    i.   Sharing of Competitively Sensitive Information with any Competitor;

    ii.   Communication with any Competitor concerning any Competitively Sensitive Information relating to a Bid or Bidding, including whether to Bid or not to Bid;

    iii.   Agreeing with any Competitor to participate in any joint Bid, collaborative Bid, cooperative Bid, or shared Bid for any contract, opportunity, or arrangement or for a part of any contract, opportunity, or arrangement; or

    iv.   Agreeing with any Competitor that Defendant or any Competitor will not Bid for any contract, opportunity, or arrangement or for a part of any contract, opportunity, or arrangement.

Successors to Covered Persons must be provided an Annual Antitrust Compliance Training within sixty (60) days of such succession.

10

5. obtain from each Covered Person or successor, within thirty (30) days of that person's Annual Antitrust Compliance Training, a certification that he or she (i) attended the training and reviewed the training materials, and (ii) is not aware of any violation of this Final Judgment that has not been reported to the Antitrust Compliance Officer;

6. maintain until four years following the expiration of this Final Judgment and furnish to the United States within ten days if requested to do so:

   i. a list identifying all employees having received the notices and compliance training required under Paragraphs VI.E.2, VI.E.3, and VI.E.5, and the dates on which the employees received the notices and training;

   ii. copies of all Annual Antitrust Compliance Training materials; and

   iii. copies of all certifications and other materials required to be issued under Paragraph VI.E;

   iv. a record of certifications received pursuant to this Section;

   v. a copy of Defendant's whistleblower policy; and

   vi. a record of all reports received pursuant to Paragraph VI.F. and VI.G.

7. annually communicate to all Covered Persons and all other employees that they must disclose to the Antitrust Compliance Officer, without reprisal, information concerning any potential violation of this Final Judgment or the antitrust laws; and

8. by not later than ninety (90) calendar days after entry of this Final Judgment and annually thereafter, file written reports with the United States affirming

that Defendant is in compliance with its obligations under this Final

Judgment, including the training requirements under Paragraph VI.E.5;

F.       If an officer, director, or executive of Defendant or a member of its Board of

Directors learns of a potential violation of this Final Judgment or the antitrust laws by Defendant,

he or she must promptly notify the Antitrust Compliance Officer.

G.       Immediately upon the Antitrust Compliance Officer's learning of any violation or

potential violation of any of the terms of this Final Judgment or the antitrust laws, Defendant

must investigate and, in the event of a violation, must cease or modify the activity to comply

with this Final Judgment and the antitrust laws.  Defendant must maintain all documents as kept

in the ordinary course discussed with, provided to, reviewed, or requested by the Antitrust

Compliance Officer in connection with any reported violation or potential violation of this Final

Judgment or in connection with any violation or potential violation of the antitrust laws reported

to the Antitrust Compliance Officer pursuant to Paragraph VI.F. for four years following the

expiration of this Final Judgment.

H.       Within thirty (30) calendar days of the Antitrust Compliance Officer's learning of

any potential violation of any of the terms of this Final Judgment, Defendant must file with the

United States a statement describing the potential violation, including a description of all steps

taken by Defendant to remedy the potential violation.

I.       Defendant must have its Chief Executive Officer and its General Counsel certify

in writing to the United States, no later than ninety (90) calendar days after this Final Judgment

is entered and then annually on the anniversary of the date of the entry of this Final Judgment, that Defendant has complied with the provisions of this Final Judgment.

J.     Defendant must maintain a whistleblower protection policy that provides any employee may disclose, without reprisal or adverse consequences for such disclosure, to the Antitrust Compliance Officer information concerning any violation or potential violation by Defendant of this Final Judgment or the antitrust laws.

## VII.    COMPLIANCE INSPECTION

A.     For the purposes of determining or securing compliance with this Final Judgment or of any related orders such as the Stipulation and Order, or of determining whether this Final Judgment should be modified or vacated, upon written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, and reasonable notice to Defendant, Defendant must permit, from time to time and subject to legally recognized privileges, authorized representatives, including agents retained by the United States:

1.     to have access during Defendant's office hours to inspect and copy, or at the option of the United States, to require Defendant to provide electronic copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendant relating to any matters contained in this Final Judgment; and

2.     to interview, either informally or on the record, or depose Defendant's officers, employees, or agents, who may have their individual counsel present, relating to any matters contained in this Final Judgment. The interviews must be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendant.

13

B.      Upon the written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, Defendant must submit written reports or respond to written interrogatories, under oath if requested, relating to any matters contained in this Final Judgment.

## VIII.   PUBLIC DISCLOSURE

A.      No information or documents obtained pursuant to any provision this Final Judgment may be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party, including grand-jury proceedings, for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

B.      In the event of a request by a third party, pursuant to the Freedom of Information Act, 5 U.S.C. § 552, for disclosure of information obtained pursuant to any provision of this Final Judgment, the Antitrust Division will act in accordance with that statute, and the Department of Justice regulations at 28 C.F.R. part 16, including the provision on confidential commercial information, at 28 C.F.R. § 16.7.  Defendant submitting information to the Antitrust Division should designate the confidential commercial information portions of all applicable documents and information under 28 C.F.R. § 16.7.  Designations of confidentiality expire 10 years after submission, "unless the submitter requests and provides justification for a longer designation period."  *See* 28 C.F.R. § 16.7(b).

C.      If at the time that Defendant furnishes information or documents to the United States pursuant to any provision of this Final Judgment, Defendant represents and identifies in writing information or documents for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendant marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of

14

Civil Procedure," the United States must give Defendant 10 calendar days' notice before divulging the material in any legal proceeding (other than a grand jury proceeding).

## IX.    RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any party to this Final Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## X.    ENFORCEMENT OF FINAL JUDGMENT

A.    The United States retains and reserves all rights to enforce the provisions of this Final Judgment, including the right to seek an order of contempt from the Court. Defendant agrees that in a civil contempt action, a motion to show cause, or a similar action brought by the United States relating to an alleged violation of this Final Judgment, the United States may establish a violation of this Final Judgment and the appropriateness of a remedy therefor by a preponderance of the evidence, and Defendant waives any argument that a different standard of proof should apply.

B.    This Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws, including Section 7A of the Clayton Act, and to restore the competition the United States alleges was harmed by Defendant. Defendant agrees that it may be held in contempt of, and that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

15

C.      In an enforcement proceeding in which the Court finds that Defendant has violated this Final Judgment, the United States may apply to the Court for an extension of this Final Judgment, together with other relief that may be appropriate. In connection with a successful effort by the United States to enforce this Final Judgment against Defendant, whether litigated or resolved before litigation, Defendant agrees to reimburse the United States for the fees and expenses of its attorneys, as well as all other costs including experts' fees, incurred in connection with that effort to enforce this Final Judgment, including in the investigation of the potential violation.

D.      For a period of four years following the expiration of this Final Judgment, if the United States has evidence that Defendant violated this Final Judgment before it expired, the United States may file an action against Defendant in this Court requesting that the Court order: (1) Defendant to comply with the terms of this Final Judgment for an additional term to be determined by the Court; (2) all appropriate contempt remedies; (3) additional relief needed to ensure the Defendant complies with the terms of this Final Judgment; and (4) fees or expenses as called for by this Section X.

## XI.     EXPIRATION OF FINAL JUDGMENT

Unless the Court grants an extension, this Final Judgment will expire seven (7) years from the date of its entry if Defendant has paid the civil penalty in full, except that if Defendant is found to violate this Final Judgment, either by the Court or by stipulation of the parties, the United States may move to extend the Final Judgment.

## XII.    RESERVATION OF RIGHTS

This Final Judgment addresses only the claims stated in the Complaint against Defendant, which solely alleges violations of 7A of the Clayton Act (15 U.S.C. § 18a). The United States

reserves all rights for any other claims against the Defendant. This Final Judgment thus does not in any way affect or address any other charges or claims that may be filed by the United States.

## XIII.  PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including by making available to the public copies of this Final Judgment and the Competitive Impact Statement, public comments thereon, and any response to comments by the United States. Based upon the record before the Court, which includes the Competitive Impact Statement and, if applicable, any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: December 9, 2024
      _____

                                              John P. Cronan
                                         United States District Judge